| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Case No. 3:21-cr- 50 |
| v. ) | Judges: VARLAN / POPLIN |
| **ANGELIA RENAE BROWN** ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and defendant, ANGELIA RENAE BROWN ("defendant"), and defendant's attorney, Scott A. Lanzon, have agreed upon the following, pursuant to **Federal Rule of Criminal Procedure 11(c)(1)(C)**.

1.      Defendant will waive indictment and arraignment and plead guilty to an information charging her with the following two offenses:

(a)      **Count One: Wire Fraud**.  Defendant, for the purpose of executing a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted in interstate commerce by means of a wire communication, fraudulent checks payable to defendant, in violation of 18 U.S.C. § 1343.

> **Penalty range**: up to twenty years' imprisonment, up to five years' supervised release, a fine of up to $250,000, restitution if applicable, and a mandatory $100 special assessment.

(b)      **Count Two: Making and subscribing a false tax return**.  Defendant made and subscribed a Form 1040 in 2019, which was verified by a written declaration that it was made under penalties of perjury, and which she did not believe to be true and correct as to every material matter, in violation of 26 U.S.C. § 7206(1).

> **Penalty range**: up to three years' imprisonment, up to one year of supervised release, a fine of up to $250,000, restitution if applicable, and a mandatory $100 special assessment.

2. In consideration of defendant's guilty plea, the United States agrees not to further prosecute defendant in the Eastern District of Tennessee for any other criminal offenses committed by defendant that are related to the charges contained in the information and that are known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

3. Defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. The elements of the offenses are:

(a) *Count One* – Wire Fraud – 18 U.S.C. § 1343:

    i. Defendant devised or willfully participated in a scheme to defraud;

    ii. Defendant used or caused to be used an interstate wire communication in furtherance of the scheme; and

    iii. Defendant intended to deprive a victim of money or property.

(b) *Count Two* – Making and subscribing a false tax return – 26 U.S.C. § 7206(1):

    i. Defendant made an IRS Form 1040, U.S. Individual Income Tax Return, for the year 2017 which was false as to a material matter;

    ii. The IRS Form 1040, U.S. Individual Income Tax Return, contained a written declaration that it was made under penalty of perjury;

    iii. When defendant made the IRS Form 1040, U.S. Individual Income Tax Return, she knew it contained materially false information; and

    iv. When the Defendant did so, she acted willfully, that is, she intended to do something she knew violated the law.

4. In support of defendant's guilty plea, the United States and defendant agree and stipulate to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of defendant's guilty plea. They do not necessarily constitute all of the facts in the

case. Other facts may be relevant to sentencing. Both defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

**Facts Relevant to Count One: Wire Fraud**

(a) Childhelp Inc. is a national nonprofit organization committed to the prevention and treatment of child abuse. Childhelp also operates a foster-care program. Childhelp is a national organization headquartered in Phoenix, Arizona, with an operating office in Knoxville, Tennessee.

(b) At all times relevant to the charged offenses in this matter, and specifically from around April 2012 to June 12, 2020, defendant was employed by Childhelp. Her most recent title was Senior Staff Accountant.

(c) Childhelp's corporate policy required signatures from two program directors on each Childhelp check.

(d) Beginning in or around April 2012, and continuing to on or about April 19, 2020, defendant wrote unauthorized checks payable to herself from Childhelp's bank account. She then deposited those unauthorized checks (via mobile, in-person, or ATM deposits) in her personal bank account at Regions Bank (account number X-3992).

(e) Each time defendant deposited an unauthorized check into her bank account, she caused an interstate wire communication to be used in furtherance of her scheme, because the checks cleared through an interstate wire communications system used by financial institutions, including Regions Bank and First Bank (formerly known as Clayton Bank).

(f) To execute the scheme to defraud Childhelp, defendant forged the signatures of various Childhelp program directors on each unauthorized check that defendant wrote to herself.

Page 3 of 22

(g) To further execute the scheme, defendant would print Childhelp checks using company equipment, handwrite her name on the checks, and then use the mobile-deposit option at Regions Bank to deposit the unauthorized checks into her personal bank account. Defendant also went to First Bank to obtain a book of Childhelp checks so that she could write additional unauthorized checks to herself that were drawn on Childhelp's bank account.

(h) To conceal the fraudulent scheme, after each forged and fraudulent check was deposited into her personal account, and after Childhelp received monthly bank statements from First Bank, defendant altered Childhelp's bank statements to make it appear that the forged checks were paid to one of Childhelp's regular contractors, customers, or marketing companies, such as Children's Hospital, WBIR Channel 10, WVLT, and others.

(i) For example, on November 7, 2013, defendant wrote Childhelp check no. 1141 to herself for $2,550.00. Defendant deposited check no. 1141 into her personal checking account at Regions Bank. As deposited, the check was payable to defendant, as evidenced by the image produced by Regions Bank:



To conceal her scheme from Childhelp, defendant later altered Childhelp's bank statements to make it appear as though check no. 1141 was paid to GEM Construction, as

evidenced by the picture of the check below, one of the many altered checks Childhelp discovered in its monthly bank statements from Clayton Bank:



(j)     For example, on September 28, 2018, defendant wrote Childhelp check no. 7134 to herself for $3,000.00. Defendant deposited check no. 7134 into her personal checking account at Regions Bank. As deposited, the check was payable to defendant, as evidenced by the image produced by Regions Bank:

To conceal her scheme from Childhelp, defendant later altered Childhelp's bank statements to make it appear as though check no. 7134 was paid to Cumulus Media, as evidenced

Case 3:21-cr-00050-TAV-DCP   Document 2   Filed 04/23/21   Page 5 of 22   PageID #: 9

by the picture of the check below, which Childhelp discovered in its bank statements from First Bank (previously Clayton Bank):



Check      7134   Date: 10/01   Amount: $3,000.00

    (k)      For example, on October 12, 2018, defendant wrote Childhelp check no. 7140 to herself for $2,892.37. Defendant deposited check no. 7140 into her personal checking account at Regions Bank. As deposited, the check was payable to defendant, as evidenced by the image produced by Regions Bank:



    To conceal her scheme from Childhelp, defendant later altered Childhelp's bank statements to make it appear as though check no. 7140 was paid to Children's Hospital:

Page 6 of 22

Check     7140    Date: 10/15    Amount: $2,892.37

(l)     For example, on November 16, 2018, defendant wrote Childhelp check no. 7165 to herself for $3,000. Defendant deposited check no. 7165 into her personal checking account at Regions Bank. As deposited, the check was payable to defendant, as evidenced by the image produced by Regions Bank:



To conceal her scheme from Childhelp, defendant later altered Childhelp's bank statements to make it appear as though check no. 7165 was paid to WBIR Channel 10:

Check     7165    Date: 11/19    Amount: $3,000.00

    (m)    For example, on January 31, 2020, defendant wrote Childhelp check no.

7461 to herself for $2,500. Defendant deposited check no. 7461 into her personal checking account

at Regions Bank. As deposited, the check was payable to defendant, as evidenced by the image

produced by Regions Bank:



    To conceal her scheme from Childhelp, defendant later altered Childhelp's bank

statements to make it appear as though check no. 7461 was paid to WVLT:

Page 8 of 22

CHILDHELP INC
[address illegible]
[illegible], TN 27918

7461

DATE 1/31/20

PAY TO THE ORDER OF WULT                    $ 2500.00

Two thousand five hundred & 00/100                    DOLLARS

FirstBank

FOR

⑆007461⑆ ⑆084307033⑆ 550248 58⑆

Check    7461   Date: 02/03   Amount: $2,500.00

(n)     From on or about April 23, 2012, and continuing through on or about May 18, 2020, defendant wrote to herself, and deposited into her personal checking account, 885 forged and fraudulent checks drawn on Childhelp's company account. The total amount of the forged and fraudulent checks written by defendant exceeded $2,000,000:

| Year | Number of Childhelp checks defendant wrote to herself | Total amount |
|------|-------------------------------------------------------|--------------|
| 2012 | 21 | $43,241.30 |
| 2013 | 99 | $191,680.45 |
| 2014 | 100 | $206,353.10 |
| 2015 | 117 | $258,859.85 |
| 2016 | 127 | $310,713.05 |
| 2017 | 133 | $322,178.27 |
| 2018 | 126 | $327,628.15 |
| 2019 | 121 | $297,456.53 |
| 2020 | 41 | $106,354.29 |
| **Total** | **885** | **$2,064,464.99** |

(o)     Childhelp eventually learned that defendant had been writing forged and fraudulent checks to herself, and company executives confronted defendant. Defendant admitted

Page 9 of 22

that she had, over a 9-year period, written forged and fraudulent checks to herself, deposited those checks into her personal checking account, and then altered Childhelp's bank statements to conceal her fraud.

(p)     Defendant was terminated from Childhelp on June 12, 2020.

(q)     Defendant admits that she executed a scheme to defraud Childhelp by writing forged and fraudulent checks to herself, depositing the forged and fraudulent checks into her personal bank account, making or causing to be made interstate wire transmissions in furtherance of her fraud by using the mobile deposit function on her electronic mobile device, which further caused the forged and fraudulent checks to be cleared through electronic communications with Regions Bank, outside the state of Tennessee.

(r)     Defendant further admits that she attempted to conceal her fraud, and did conceal her fraud, by altering Childhelp's bank statements from First Bank (previously Clayton Bank).

**Facts Relevant to Count Two: Filing False Tax Returns**

(s)     Defendant and her husband Jeffery Brown filed self-prepared Form 1040-A or Form 1040 joint income tax returns for tax years 2014 to 2019.

(t)     Defendant and her husband filed electronic tax returns for tax years 2016, 2017, and 2019 and paper tax returns for tax years 2012, 2013, 2014, 2015, and 2018. Defendant and her husband completed a declaration acknowledging that the tax returns were filed under penalties of perjury.

(u)     From tax year 2012 to tax year 2019, the only income defendant and her husband reported on their tax returns were wages from their respective jobs.

(v)  Defendant earned and reported wages from Childhelp, and her husband earned and reported wages from WM Resources, Inc. Defendant did not report any of the stolen funds from Childhelp as income on her tax returns for tax years 2012 through 2019.

(w)  Defendant and her husband's reported income, taxes paid, unreported income, and unpaid taxes are calculated in the chart below:

| Tax Year | Taxable income reported on tax return | Taxes actually paid | Unreported income from fraud | Actual Income | Unpaid taxes (tax loss per U.S.S.G. § 4T1.4) |
|---|---|---|---|---|---|
| 2012 | $53,820 | $4,704 | $43,241.30 | $97,061.30 | $10,125 |
| 2013 | $50,851 | $5,239 | $191,680.45 | $242,531.45 | $52,390 |
| 2014 | $54,162 | $5,573 | $206,353.10 | $260,515.10 | $57,884 |
| 2015 | $65,521 | $7,653 | $258,859.85 | $328,220.85[1] | $76,307 |
| 2016 | $70,684 | $7,674 | $310,713.05 | $390,631.05[2] | $96,647 |
| 2017 | $70,975 | $9,714 | $322,178.27 | $399,559.27[3] | $97,357 |
| 2018 | $88,739 | $11,399 | $327,628.15 | $416,367.15 | $85,708 |
| 2019 | $97,100 | $13,085 | $297,456.53 | $394,556.54 | $75,806 |
| Total | | | $1,958,110.70 | | $552,224 |

(x)  For tax year 2018, on or about October 17, 2019, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return. That return stated that joint taxable income for tax year 2018 was the sum of $88,739, and the amount of tax due and owing thereon was the sum of $11,399. In fact, as she then and there knew, defendant's reported taxable income for the 2018 tax year did not include money defendant obtained from her scheme,

---

[1] This number includes a $3,840 tax exemption for tax year 2015.

[2] This number includes a $9,234 tax exemption for tax year 2016.

[3] This number includes a $7,290 tax exemption for year 2017 and an itemized deduction of $884.

and her actual income for the year was the sum of $416,367.15,[4] upon which she owed the United States an income tax of $85,708.

(y)     Defendant admits that she made and subscribed a tax return, which is a document containing a written declaration that it was made under penalties of perjury, knowing that the tax return was false as to the amount of her income, and that she did so with the specific intent to willfully violate the law.

(z)     Defendant committed these acts in the Eastern District of Tennessee and elsewhere.

**Specific Offense Characteristics – Tax Loss Amount**

(aa)     Defendant stipulates and agrees that her misrepresentation and failure to disclose her relevant income and taxes owed for tax years 2012, 2013, 2014, 2015, 2016, 2017, and 2019, constitute relevant conduct for purposes of this plea agreement.

(bb)     For tax year 2012, on or about April 15, 2013, defendant filed with the Internal Revenue Service a Form 1040A, U.S. Individual Income Tax Return. That return stated that joint taxable income for tax year 2012 was the sum of $53,820, and the amount of tax due and owing thereon was the sum of $4,704. In fact, as she then and there knew, defendant's reported taxable income for the 2012 tax year did not include money defendant obtained from her scheme, and her actual income was the sum of $97,061.30, upon which she owed to the United States an additional income tax of $10,125.[5]

---

[4] Actual income for 2018 and other years of relevant conduct is calculated by adding the reported taxable income to the unreported taxable income from the fraud, in addition to any exemptions.

[5] The additional tax owed for 2012, and for the other years included as relevant conduct, is calculated by subtracting the taxes actually paid from the amount of tax that defendant actually owed. In 2012, for example, defendant's actual taxable income was $97,061.30, which included the income reported on her Form 1040A ($53,820) in addition to her unreported income from the fraud ($43,241.30). Thus, defendant should have paid $14,829 of tax, but she only paid $4,704.

Case 3:21-cr-00050-TAV-DCP   Document 2   Filed 04/23/21   Page 12 of 22   PageID #: 16

(cc) For tax year 2013, on or about May 29, 2014, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return. That return stated that joint taxable income for tax year 2013 was the sum of $50,851, and the amount of tax due and owing thereon was the sum of $5,239. In fact, as she then and there knew, defendant's reported taxable income for the 2013 tax year did not include money defendant obtained from her scheme, and her actual income was the sum of $242,531.45, upon which she owed to the United States an additional income tax of $52,390.

(dd) For tax year 2014, on or about June 10, 2015, defendant filed with the Internal Revenue Service a Form 1040-A, U.S. Individual Income Tax Return. That return stated that joint taxable income for tax year 2014 was the sum of $54,162, and the amount of tax due and owing thereon was the sum of $5,573. In fact, as she then and there knew, defendant's reported taxable income for the 2014 tax year did not include money defendant obtained from her scheme, and her actual income was the sum of $260,515.10, upon which she owed to the United States an additional income tax of $57,884.

(ee) For tax year 2015, on or about April 15, 2016, defendant filed with the Internal Revenue Service a Form 1040-A, U.S. Individual Income Tax Return. That return stated that joint taxable income for tax year 2015 was the sum of $65,521, and the amount of tax due and owing thereon was the sum of $7,653. In fact, as she then and there knew, defendant's reported taxable income for the 2015 tax year did not include money defendant obtained from her scheme, and her actual income was the sum of $328,221, upon which she owed to the United States an additional income tax of $76,307.

---

The difference—$10,125—is the amount of tax defendant still owes for tax year 2012. That basic formula is followed for each year of relevant conduct.

(ff)     For tax year 2016, on or about February 17, 2017, defendant filed with the Internal Revenue Service a Form 1040-A, U.S. Individual Income Tax Return.  That return stated that joint taxable income for tax year 2016 was the sum of $70,684, and the amount of tax due and owing thereon was the sum of $7,674.  In fact, as she then and there knew, defendant's reported taxable income for the 2016 tax year did not include money defendant obtained from her scheme, and her actual income for the year was the sum of $390,632, upon which she owed the United States an additional income tax of $96,647.

(gg)     For tax year 2017, on or about April 11, 2018, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return.  That return stated that joint taxable income for tax year 2017 was the sum of $70.975, and the amount of tax due and owing thereon was the sum of $9,714. In fact, as she then and there knew, defendant's reported taxable income for the 2017 tax year did not include money defendant obtained from her scheme, and her actual income for the calendar year was the sum of $399,559, upon which she owed the United States an additional income tax of $97,357.

(hh)     For tax year 2019, on or about July 15, 2020, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return.  That return stated that joint taxable income for tax year 2019 was the sum of $97,100, and the amount of tax due and owing thereon was the sum of $13,085.  In fact, as she then and there knew, defendant's reported taxable income for the 2020 tax year did not include money defendant obtained from her scheme, and her actual income for the calendar year was the sum of $394,557, upon which she owed the United States an additional income tax of $75,806.

(ii)     For the purposes of determining the applicable offense level under USSG §§2T1.l and 2T4.1, defendant stipulates and agrees that the tax loss resulting from her violation

Case 3:21-cr-00050-TAV-DCP   Document 2   Filed 04/23/21   Page 14 of 22   PageID #: 18

of 26 U.S.C. § 7206(1), and relevant conduct related to that violation, was greater than $550,000 and not more than $1,500,000.

5. Defendant is pleading guilty because she is in fact guilty. Defendant understands that, by pleading guilty, she is giving up several rights, including:

    (a)    the right to be indicted by a grand jury for these crimes;

    (b)    the right to plead not guilty;

    (c)    the right to a speedy and public trial by jury;

    (d)    the right to assistance of counsel at trial;

    (e)    the right to be presumed innocent and to have the burden of proof placed on the United States to prove defendant guilty beyond a reasonable doubt;

    (f)    the right to confront and cross-examine witnesses against defendant;

    (g)    the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    (h)    the right not to testify and to have that choice not used against defendant.

6. Pursuant to **Federal Rule of Criminal Procedure 11(c)(1)(C)**, defendant and the United States agree that a sentence of **36 months' imprisonment** is the appropriate disposition of this case. That sentence consists of 36 months' imprisonment on Count One and 36 months' imprisonment on Count Two, to run concurrently. Additionally, the Court may impose any lawful term of supervised release, fines, and any special assessment fees as required by law. If the Court declines to accept this agreement, either party will be free to withdraw from this agreement

7. The parties' agreement and recommended 36-month sentence is based on their calculation of the expected guidelines range, which is based on the following analysis:

    (a)    **Grouping and Base Offense Level**. The two offenses to which defendant is pleading guilty will <u>not</u> be grouped together under the grouping rules in

Chapter 3 of the Guidelines. *See* U.S.S.G. § 3D1.2(d). Therefore, the adjusted offense levels of both offenses are calculated, and then multiple-count adjustments are made under the guidance of Chapter 3.

(b) **Count One**. The base offense level for the wire-fraud offense is 6. *See id.* § 2B1.1(a)(2).

     i. *Specific offense characteristics*. Add 16 levels based on the total loss amount of roughly $2 million. *See id.* § 2B1.1(b)(1)(I).

     ii. *Enhancements*. None.

     iii. *Adjusted Offense Level*: 22.

(c) **Count Two**. The base offense level is 20 based on the total tax loss for tax years 2012-2019, including relevant conduct. U.S.S.G. §§ 2T1.1(c)(1), 2T4.1(H), and 1B1.3(a). The total tax loss for tax years 2012-2019 is more than $550,000 but not greater than $1,500,000.

     i. *Specific Offense Characteristics*.

          1. *§ 2T1.1(b)(1)*. Add 2 levels, because defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity.

     ii. *Enhancements*. None.

     iii. *Adjusted Offense Level*: 22.

(d) **Multiple Count Adjustment**, pursuant to U.S.S.G. § 3D1.4(a).

     i. **Count One** – Adjusted Offense Level: 22 = 1 unit

     ii. **Count Two** – Adjusted Offense Level: 22 = 1 unit

(e) **Total number of units**: 2, resulting in a two-level increase to the greater of the adjusted offense levels. *Id.* § 3D1.4 (Table).

(f) **Greater of the Adjusted Offense Levels**. 22, from Count One.

(g) **Increase in Offense Level**. The greater of the adjusted offense levels (22) is increased pursuant to the number of units assigned by the amount indicated in the table at U.S.S.G. § 3D1.4. Here, the total number of units based on the combined offenses is 2 units, which results in a **two-level increase** to the greater of the adjusted offense levels.

(h) **Combined Offense Level**. 24 (22 + 2).

(i)    **Acceptance of Responsibility**. Subtract 3 levels. *See id.* § 3E1.1(a), (b).

(j)    **Total Offense Level**: 21.

(k)    **Projected Guidelines Range**. Based on an expected criminal history category of I and a total offense level of 21, the parties expect the Guidelines range to be **37 to 46 months' imprisonment**.

8.    Defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to Childhelp and the IRS. Defendant agrees, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A, that the appropriate amount of restitution is the total amount of fraudulent proceeds defendant received as a result of the fraudulent scheme:

| Victim | Restitution Amount |
|---|---|
| **Childhelp, Inc.** | **$2,064,464.99** |
| **IRS** | **$552,224** |
| **Total** | **$2,616,688.99** |

The parties understand that the Court makes any determination regarding apportionment of restitution pursuant to 18 U.S.C. § 3664(h).

9.    Given defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of § 3E1.l(a) of the Sentencing Guidelines. Further, if defendant's offense level is 16 or greater, and defendant is awarded the two-level reduction pursuant to § 3E1.l(a), the United States agrees to move the Court, at or before the time of sentencing, to decrease the offense level by one additional level pursuant to § 3E1.1 (b) of the Sentencing Guidelines. Should defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for his offense, including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made,

and to recommend to the Court that defendant not receive any reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

10. **Financial Obligations**. Defendant agrees to pay the special assessment in this case prior to sentencing. Defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. Defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. Defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. Defendant and counsel also agree that defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying defendant's counsel and outside the presence of defendant's counsel.

In order to facilitate the collection of financial obligations to be imposed with this prosecution, defendant agrees to disclose fully all assets in which she has any interest or over which she exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form it provides and as it directs. Defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

Page 18 of 22

(b)     Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate defendant's ability to satisfy any financial obligation imposed by the Court.

(c)     If so requested by the United States, defendant will promptly execute authorizations on forms provided by the United States Attorney's Office to permit the United States Attorney's Office to obtain defendant's financial and tax records.

11.     Defendant acknowledges that the principal benefits to the United States of this agreement include the conservation of limited government resources and bringing a certain end to the case.  Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of defendant's acceptance of responsibility for the offense committed, defendant voluntarily, knowingly, and intentionally agrees to the following:

(a)     Defendant will not file a direct appeal of her conviction or sentence with one exception:  defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater.  Defendant also waives the right to appeal the Court's determination as to whether her sentence will be consecutive or concurrent to any other sentence.

(b)     Defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack her conviction or sentence, with two exceptions: defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

(c)     Defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be

sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

12.     This plea agreement becomes effective once it is signed by the parties and is not contingent on defendant's entry of a guilty plea.  If the United States violates the terms of this agreement, defendant will have the right to withdraw from this agreement.  If defendant violates the terms of this agreement in any way (including, without limitation, by failing to enter a guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state, or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses.  In addition, the United States may prosecute defendant for any and all federal crimes that she committed related to this case, including any charges that were dismissed and any other charges the United States agreed not to pursue.  Defendant expressly waives any statute-of-limitations defense and any constitutional or speedy trial or double jeopardy defense to prosecution for the conduct covered by this agreement.  Defendant also understands and agrees that a violation of this agreement by defendant does not entitle her to withdraw her guilty plea.

13.     The terms of this plea agreement, including the terms regarding restitution, shall in no way limit the ability or right of the IRS to assess and collect taxes, interest, and penalties, if determined to be owed by defendant.  This paragraph shall include, without limitation, any civil fraud penalties imposed by 26 U.S.C. § 6663.  The defendant agrees that, prior to the date of sentencing, she shall file or cause to be filed amended Forms 1040 for 2014, 2015, 2016, 2017, 2018, and 2019, and shall, upon request from any representative of the IRS, provide any requested information and back-up documentation for those referenced forms.  The defendant shall not,

subsequent to filing those amended Forms 1040, file any claims for refunds of taxes, penalties, and interest attributable to those forms.

14.     Notwithstanding any terms of this plea agreement to the contrary, this plea agreement is expressly conditioned upon approval by the Department of Justice, Criminal Tax Division.  This plea agreement shall not be enforceable in any respects until that approval is provided.  If the Department of Justice, Criminal Tax Division does not provide that approval, this plea agreement shall be null and void and not enforceable against the United States.

15.     The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms.  If additional terms are included in the supplement, they are hereby fully incorporated herein.

**[continued on next page]**

16.     This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning defendant's guilty plea to the above-referenced charges.   There are no other agreements, promises, undertakings, or understandings between defendant and the United States.  The parties understand and agree that the terms of this agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
Acting United States Attorney

4/21/21
Date

By: _____
William A. Roach, Jr.
Assistant United States Attorney

4/20/21
Date

_____
Angelia Renae Brown
Defendant

4/20/21
Date

_____
Scott A. Lanzon
Attorney for the Defendant

Page 22 of 22